T.C. Summary Opinion 2011-1


UNITED STATES TAX COURT


BEVERLY BERNICE BANG, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 9371-07S.                    Filed January 4, 2011.


<u>Kent Vriezelaar</u>, for petitioner.

<u>Michael W. Bitner</u>, for respondent.


MORRISON, <u>Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect when the petition was filed.[1]  Under section 7463(b), the decision to be entered is not reviewable by any other court,

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code (Code), as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure. Bang resided in Iowa at the time her petition was filed.

and this opinion shall not be treated as precedent for any other case. Pursuant to section 6330(d), petitioner Beverly Bang seeks review of the determination of the IRS Office of Appeals to sustain a proposed levy. Respondent, whom we refer to here as the IRS, has filed a motion for summary judgment.

The proposed levy seeks to collect interest and penalties that arose from Bang's failure to timely pay $2,636 of income tax for her 1983 tax year. The $2,636 payment, which was due on April 15, 1984, was made on May 12, 2006. The amount of the proposed levy is $32,343.46. The $32,343.46 comprises four components:

•underpayment interest under section 6601(a); i.e. $21,553.52 in interest on the $2,636 underpayment from the day the payment was due, April 15, 1984, until the date the $2,636 was assessed by the IRS, March 27, 2006 (the $21,553.52 does not include the additional interest that continued to accrue until the date Bang paid the $2,636 on May 12, 2006);[2]

•tax-motivated transaction interest under former section 6621(d)); i.e. the $21,553.52 computed above used an interest rate of 120 percent of the normal rate because the IRS had determined that the $2,636 underpayment was attributable to a tax-motivated transaction;[3]

_____

[2]Sec. 6601(a) requires that, if a taxpayer underpays tax, the taxpayer must pay interest on the unpaid tax from the date the tax is due until the date the tax is paid. The interest rate is set for each calendar quarter.

[3]Former sec. 6621(d) provided that if any underpayment of tax was attributable to a "tax-motivated transaction" the interest rate on that payment would be 20 percent more than the ordinary interest rates on underpayments. See Deficit Reduction Act of 1984, Pub. L. 98-369, sec. 144(a), 98 Stat. 682.

•the 50-percent-of-interest negligence penalty under former section 6653(a)(2); i.e. $10,776.76, which was 50 percent of $21,553.52, reflecting the determination that the $2,636 underpayment was due to negligence;[4] and

•a failure-to-pay-tax penalty; i.e. $13.18 assessed on June 12, 2006.[5]

The levy did not include the $2,636 in additional income tax for the 1983 year and did not include a $131.80 section 6653(a)(1) 5-percent negligence penalty for underpaying her 1983 tax.[6]  Bang had already paid these amounts.  At the Appeals Office, Bang was

---

[4]Former sec. 6653(a)(2) (as amended by the Economic Recovery Tax Act of 1981, sec. 722(b)(1), Pub. L. 97-34, 95 Stat. 342) provided that if any underpayment of tax was attributable to negligence, there would be an addition to tax equal to 50 percent of the interest payable under sec. 6601 on the portion of the underpayment due to negligence.  The calculation of the 50-percent addition to tax was made when the underlying tax was either assessed or paid.  Id.

In 1986, former sec. 6653(a)(2) was renumbered as former sec. 6653(a)(1)(B).  Tax Reform Act of 1986 (TRA 1986), Pub. L. 99-514, sec. 1503(a), 100 Stat. 2742 (effective for returns the due date for which (determined without regard to extension) is after Dec. 31, 1986, id. sec. 1503(e), 100 Stat. 2743).

[5]There are two failure-to-pay penalties in the Code.  Sec. 6651(a)(3) provides that a taxpayer who underreports the tax owed on the return and does not pay this underreported amount within 21 days from the date the IRS demands payment of the amount must pay an addition to tax equal to 0.5 percent of the unpaid amount per month, not exceeding 25 percent in the aggregate.  Sec. 6651(a)(2) provides that a taxpayer who does not pay the tax reported on a return must pay an addition to tax equal to 0.5 percent per month of the amount not paid, not exceeding 25 percent in the aggregate.

[6]In 1986, former sec. 6653(a)(1) was renumbered as former sec. 6653(a)(1)(A).  TRA 1986, sec. 1503(a) (effective for returns the due date for which (determined without regard to extension) is after Dec. 31, 1986, id. sec. 1503(e)).

not entitled to challenge her liability for, or the collection of, these two amounts of $2,636 and $131.80. These two amounts are therefore not before the Tax Court.

## Background

### 1. The Contra Costa Partnership

Bang was a partner in a partnership called Contra Costa Jojoba Research Partners. This partnership, which we shall refer to as the Contra Costa partnership, filed a partnership tax return for its 1983 tax year on which it deducted $437,500 in research and experimental expenditures under section 174. On her own 1983 tax return, Bang reported a deduction of $12,500 for her share of the $437,500 deduction that the partnership had claimed. The 1983 tax return was due on April 15, 1984. See sec. 6072.

The IRS issued a Notice of Final Partnership Administrative Adjustment (FPAA) regarding the Contra Costa partnership on April 12, 1989. The FPAA determined that the $437,500 deduction for research and experimental expenditure was erroneous and that the appropriate deduction was zero. In explaining the reasons for the adjustment the FPAA stated:

> We have disallowed the amount above because it has been determined that there is insufficient evidence to demonstrate that the expenses listed above qualify as research and development expenditures. Further, it has been determined that a portion of the research and experimental expenditures listed in the return may be for items not associated with research and experimental costs.

The FPAA did not specifically mention penalties, except for the following assertion:

THE FOLLOWING PENALTIES ARE APPLICABLE TO THE PARTNER/SHAREHOLDER

Section 6661[7]

On July 13, 1989, the Contra Costa partners challenged the FPAA determination in a partnership-level proceeding before the Tax Court, Contra Costa Jojoba Research Partners v. Commissioner, docket No. 17323-89.[8]  On January 28, 1994, the parties to docket No. 17323-89 stipulated to be bound by the legal theories and findings of fact that would determine the eventual outcome of partnership adjustments in Utah Jojoba I Research v. Commissioner, Tax Court docket No. 7619-90.[9]  The stipulation said:

> With respect to all adjustments in respondent's Notice of Final Partnership Administrative Adjustment relating to Contra Costa Research Partners, a jojoba partnership, the parties stipulate to the following terms:
>
> 1.    THE ABOVE ADJUSTMENTS[10] ARE THE ONLY ISSUES IN THE CASE.
>       A.    UPON RESOLUTION OF THESE ISSUES, A PROPOSED DECISION WILL BE PREPARED BY RESPONDENT'S COUNSEL.

---

[7]During the tax year at issue, sec. 6661(a) provided:

> SEC. 6661(a).  Addition to Tax.--If there is a substantial understatement of income tax for any taxable year, there shall be added to the tax an amount equal to 10 percent of the amount of any underpayment attributable to such understatement.

[8]It was the tax matters partner who filed the petition in the partnership-level proceedings, but the law considers all partners to be parties to the proceeding.  See sec. 6226(c)(1).

[9]Bang did not sign the stipulation to be bound, but the tax matters partner signed it, and he was authorized to sign on behalf of all of the Contra Costa partners.  See sec. 6224(c)(1), (3).

[10]The phrase "Above Adjustments" refers to the adjustments in the IRS's FPAA issued to the Contra Costa partnership.

2.    The above adjustments, as specified in the preamble, shall be redetermined by application of the same legal theories as that which resolved the same partnership item adjustments with respect to the following partnership:
Name of Case:   Utah Jojoba I Research
Tax Court Docket No.:   7619-90
(hereinafter the CONTROLLING CASE)

3.    All issues involving the above adjustments shall be resolved as if the partnership in this case was the same as the partnership in the CONTROLLING CASE;

    A.    If the Court makes findings of underlying facts with respect to tax motivated transactions, a valuation overstatement, or other elements applicable to a determination of additions to tax and/or section 6621(c)[11] interest, which are attributable to the above-designated partnership item adjustments, the findings of fact in the CONTROLLING CASE shall apply to the partners in Contra Costa Jojoba Research Partners as if the partnership in this case was the same as the partnership in the CONTROLLING CASE;
    * * *.

    *        *        *        *        *        *        *

9.    This stipulation applies to all partners in Contra Costa Jojoba Research Partners who were parties to the action within the meaning of I.R.C. § 6226(c) and (d) on the date the stipulation is executed by the respondent and whose partnership items have not subsequently converted to nonpartnership items pursuant to I.R.C. § 6231(b) prior to the entry of the decision in this case; * * * .

In 1998, the Tax Court issued an opinion in Utah Jojoba I Research v. Commissioner, T.C. Memo. 1998-6.  The Court held that the Utah Jojoba I Research partnership was "not entitled to a section 174(a) research and experimental expense deduction for 1982 because it did not directly or indirectly engage in research or experimentation."  Id.  The Court in Utah Jojoba I did not

---

[11]Former sec. 6621(d), Deficit Reduction Act of 1984, Pub. L. 98-369, sec. 144(a), 98 Stat. 682, as in effect for the 1983 year, imposed an increased interest rate on underpayments due to tax-motivated transactions.  The provision was later renumbered sec. 6621(c) pursuant to TRA 1986 sec. 1511(c)(1), 100 Stat. 2744.

make any finding or holding that expressly referred to penalties or interest.[12]

On April 11, 2005, the Tax Court issued an order and decision in <u>Contra Costa Jojoba Research Partners v. Commissioner</u>, docket No. 17323-89 (<u>Contra Costa</u>). The order and decision sustained the partnership item adjustments that the IRS had determined in the Contra Costa FPAA.[13]

2. <u>The Notice of Deficiency:  March 13, 2006</u>

The IRS issued a deficiency notice to Bang on March 13, 2006. Attached to the deficiency notice was a Form 4549-A, Income Tax Discrepancy Adjustments. We consider Form 4549-A to be part of the deficiency notice issued to Bang. Also attached to the deficiency notice was a Form 4089-B, Notice of Deficiency --Waiver. We refer to the Form 4089-B as the waiver form.

The first page of the deficiency notice itself (not the Form 4549-A or the Form 4089-B) contained the heading "Deficiency (Increase in tax)". Under that heading, the following text

---

[12]However, as we note later, the <u>Utah Jojoba I</u> opinion established that the partners' underpayment of tax was attributable to a tax-motivated transaction.

[13]Before the order and decision in the <u>Contra Costa</u> case was entered, the Contra Costa partners asked the Court to relieve them of their liability for accrued interest and penalties, in part, because of the length of time the <u>Contra Costa</u> case was pending. The Court rejected these arguments. It reasoned that the accrued interest and penalties were a type of "affected item" and thus were not properly before the Court in a partnership-level proceeding.

appeared:

        IRC 6653(a)(1)(A)[should be 6653(a)(1)]: $131.80
        IRC 6653(a)(1)(B)[should be 6653(a)(2)]: 50% of interest on $2,636.00.

The notice stated that

        We have determined that you owe additional tax or other amount(s),
        or both, for the tax years(s) identified above.  This letter is
        your NOTICE OF DEFICIENCY, as required by law.  The enclosed
        statement shows how we figured the deficiency.

The notice continued:

        If you want to contest this determination in court before making
        any payment, you have 90 days from the date of this letter * * *
        to file a petition with the United States Tax court for a
        redetermination of the deficiency * * * .

The notice added:

        If you decide not to file a petition with the Tax Court, please
        sign the enclosed waiver form and return it to us at the IRS
        address on the top of the first page of this letter.  This will
        permit us to assess the deficiency quickly and can help limit the
        accumulation of interest.

        If you decide not to sign and return the waiver, and you do not
        file a petition with the Tax Court within the time limit, the law
        requires us to assess and bill you for the deficiency after 90
        days from the date of this letter * * * .

The section 6653(a)(1) and (2) penalties were discussed on a

"Continuation Sheet" to the notice.  The "Continuation Sheet"

said:

        It is determined that all or part of the underpayment of tax for
        the taxable year(s) is due to negligence or intentional disregard
        of rules and regulations.  This penalty is five (5) percent of the
        full underpayment of tax (except that portion of the underpayment
        which is due to fraud) plus fifty (50) percent of the interest due
        on the part of the underpayment that is due to negligence.  The
        penalty is figured on the earlier of the date of assessment or the
        date the tax was paid.  If the return was not timely filed, the
        penalty is asserted on the full amount of the corrected tax
        instead of the underpayment of tax.

We now turn to Form 4549-A.  The Form 4549-A contained the

following chart showing the calculation of the $2,636 and

penalties:

```
1. Adjustments to Income
      a. Ordinary Loss                                    12,500.00
2. Total Adjustments                                      12,500.00
3. Taxable Income Per Return or as Previously Adjusted     9,959.00
4. Corrected Taxable Income                               22,459.00
      Tax Method                                          TAX TABLE
      Filing Status                                          Single
5. Tax                                                     4,062.00
6. Additional Taxes/Alternative Minimum                    [blank]
7. Corrected Tax Liability                                 4,062.00
8. Less Credits
      a. Investment Credit                                   187.00
9. Balance (Line 7 less total of Lines 8a thru 8d)         3,875.00
10. Plus Other Taxes
      a. Alternative Minimum Tax                               0.00
11. Total Corrected Tax Liability (Line 9 plus Lines 10a thru 10d)
                                                           3,875.00
12. Total Tax Shown on Return or as Previously Adjusted    1,239.00
13. Adjustments to a, b, c
14. Deficiency- Increase in Tax or (Overassessment - Decrease in
    Tax) (Line 11 less Line 12 adjusted by Lines 13a thru 13d)
                                                           2,636.00
15. Adjustments to Prepayment Credits-Increase (Decrease)
16. Balance Due or (Overpayment) - (Line 14 adjusted by Line 15)
    (Excluding interest and penalties)                     2,636.00
17. Penalties/Code Sections
    a.  Negligence - IRC 6653(a)                             131.80
18. Total Penalties                                          131.80
```

Underreporter attributable to negligence: *(1981-1987)* A tax
addition of 50 percent of the interest due on the underpayment
will accrue until it is paid or assessed.                     0.00

Underreporter attributable to fraud: *(1981-1987)* A tax addition of
50 percent of interest due on the underpayment will accrue until
it is paid or assessed.                                      0.00

Underreporter attributable to Tax Motivated Transactions *(TMT).*
Interest will accrue and be assessed at 120% of underpayment rate
in accordance with IRC 6621(c).[14]                          2,636.00

After this, there appeared a section entitled "Summary of Taxes,

Penalties, and Interest".  This is the text of that section:

---

[14]See supra note 11.

a. Balance due or *(Overpayment)* Taxes - *(Line 16, Page 1)* 2,636.00
b. Penalties *(Line 18)* - computed to 2/27/2006           131.80
c. Interest *(IRC §6601)* - computed to 3/29/2006             0.00
d. TMT interest - computed to 3/29/2006 *(on TMT underpayment)* 0.00
e. Amount due or refund - (sum of Lines a, b, c and d)     2,767.80

Beneath the Summary of Taxes, Penalties, and Interest was a box entitled "Other Information".  This box contained the following discussion of the increased interest rate due to tax-motivated transactions:

> The adjustment on this report is based on the changes made to Contra Costa Jojoba Research Partners EIN#94-2855838 per the Tax Court Decision.
>
> All or part of the underpayment of tax you were required to show on your return is a substantial understatement attributable to Tax Motivated Transactions, as defined by Section 6621(c)(3)[15] of the Internal Revenue Code.  Accordingly, the annual interest rate payable on your income taxes on this understatement is 120 percent of the adjusted rate established under Code Section 6621(b).
>
> The Tax Deficiency and the Tax Motivated Transaction (TMT) Interest have been processed against your account, based on the Partnership examination results, and will be reflected on the Statement of Account.
>
> The Notice of Deficiency reflects only the penalty portion of this examination report * * *.
>
> If you require any further information, please contact your Tax Matters Partner.

On the next page, a section entitled "Explanation of Items" discussed the negligence penalties under section 6653(a):

> Since all or part of the underpayment of tax you were required to show on your return is due to negligence or intentional disregard of rules and regulations, you are being charged a penalty under Section 6653(a) of the Internal Revenue Code.  This penalty is 5 percent of the full underpayment of tax plus 50 percent of the interest due on the part of the underpayment that is due to negligence.  We figured the penalty as of the date of assessment or the date the tax was paid, whichever came first.

---

[15]See supra note 14.

3. IRS Assessed the Increase in Bang's Tax Resulting From the Disallowance of the Contra Costa Deduction and Underpayment Interest:  March 27, 2006

On March 27, 2006, after the mailing of the deficiency notice, the IRS assessed the $2,636 (the tax on the increased income attributable to Bang's share of the research and experimental expenditures disallowed at the partnership level), and the accumulated interest of $21,553.52 pursuant to section 6601 (underpayment interest) and former section 6621(d) (20-percent increase in interest rate for tax-motivated transactions) on the $2,636.[16]  The $21,553.52 represented the interest that accumulated from the date the tax was due, April 15, 1984, until the date of assessment, March 27, 2006.  Interest continued to accrue after assessment until the date the tax was paid.  See sec. 6601(a).  The interest charge included the 20-percent additional interest for tax-motivated transactions, as explained above.

---

[16]As discussed below, assessment of the $2,636 did not violate the restriction on assessments contained in sec. 6213(a) because the $2,636 was a type of computational adjustment that derived entirely from a concluded partnership proceeding and was not subject to deficiency procedures.  Interest on the $2,636 could also be assessed at the same time because sec. 6601(e) provides that interest is not subject to deficiency procedures. See Field v. United States, 381 F.3d 109, 113 (2d Cir. 2004); Smith v. Commissioner, T.C. Memo. 2009-33.  Only the 5-percent and 50-percent-of-interest penalties determined were subject to the deficiency procedures of secs. 6212 and 6213(a).

4.  <u>Bang Waived Restrictions on Assessment (May 8, 2006) and
    Made Payments (May 12, 2006)</u>

Bang did not file a petition with this Court in response to
the deficiency notice.  Instead, on May 8, 2006, she executed the
waiver form that had been attached to the deficiency notice.  The
waiver form listed the following under "Deficiency--Increase in
Tax and Penalties":

| | |
|---|---|
| Tax Year Ended: | December 31, 1983 |
| Deficiency: | [blank] |
| Increase in tax | [blank] |
| Penalties | |
| IRC 6653(a)(1)(A) | 131.80 |
| IRC 6653(a)(1)(B)[17] | See *a below |
| *a 50% of interest on | 2,636.00 |

Above Bang's signature, the waiver form reads:

See the attached explanation for the above deficiencies.

I consent to the immediate assessment and collection of the
deficiencies (increase in tax and penalties) shown above, plus any
interest provided by law.

Bang sent a payment of $2,767.80 to the IRS (the sum of
$2,636 and $131.80).  The payment was received by the IRS on May
12, 2006, and applied to the account that the IRS used to keep
track of her 1983 tax year.[18]

---

[17]The Internal Revenue Code references should have been to
sec. 6653(a)(1) and sec. 6653(a)(2), not sec. 6653(a)(1)(A) and
sec. 6653(a)(1)(B).

[18]Bang would later claim in a letter attached to her Tax
Court petition that she consulted with her accountant before
making this payment and that "[my accountant] and I were totally
(continued...)

5.  <u>Assessment of the Two Negligence Penalties and Failure-To-Pay Penalty:  June 12, 2006</u>

On June 12, 2006, after Bang's execution of the waiver form, the IRS assessed the 5-percent negligence penalty of $131.80 (5 percent of $2,636), the 50-percent-of-interest negligence penalty of $10,776.76 (50 percent of the $21,553.52 for tax-motivated transaction and underpayment interest), and a failure-to-pay-tax penalty of $13.18 (the latter of which was not mentioned in the notice).[19]

The $10,776.76 amount was 50 percent of the $21,553.52 interest charge on the $2,636 underpayment.  Calculating the 50-percent-of-interest penalty in this way assumed that the entire $2,636 underpayment was attributable to negligence.  See former sec. 6653(a)(2) (penalty is 50 percent of interest on portion of underpayment attributable to negligence).

The record does not indicate whether the failure-to-pay-tax penalty was the penalty imposed by section 6651(a)(2) (failure to timely pay tax shown on return), or the penalty imposed under 6651(a)(3) (failure to timely pay tax that should have been shown

---

[18](...continued)
unaware that by paying this, I somehow agreed to any additional penalties and interest."

[19]The deficiency, underpayment interest, and tax-motivated transaction interest were assessed on Mar. 27, 2006, after the mailing of the notice but before the execution of the waiver form, as noted above.  These items were thus excluded from the June 12, 2006, assessment.

on return).  We do not have any information about how the $13.18 was calculated, although we observe that $13.18 is 0.5 percent of $2,636.

6.  Bang's Failure To File Tax Court Petition:  June 12, 2006

June 12, 2006, was also the last day for Bang to file a petition with the Court.  She did not file a petition.

7.  Final Notice of Intent To Levy:  August 23, 2006

The IRS then issued to Bang a Final Notice of Intent to Levy and Notice of Your Right to a Hearing on August 23, 2006, notifying Bang that the IRS intended to levy to collect $32,343.46.  Although the final notice of intent to levy does not identify the components of the $32,343.46, we can tell from other parts of the record that the $32,343.46 is composed of the following amounts:

| | |
|---|---|
| Underpayment interest and tax-motivated transaction interest | $21,553.52 |
| 50-percent-of-interest negligence penalty | 10,776.76 |
| Failure-to-pay-tax penalty | 13.18 |
| Total | 32,343.46 |

The $32,343.46 assessed therefore does not include the $2,636 and the 5-percent negligence penalty of $131.80, which Bang had already paid, as noted above.

8. <u>Collection Due Process Hearing</u>

Bang's accountant filed a Form 12153, Request for a Collection Due Process Hearing, on her behalf, together with a letter stating that

> it seems very unreasonable that [Bang] should be assessed, [sic] negligence, penalties and interest on deficiencies dating back to 1983 and 1985. She promptly paid the tax deficiency in 2006 when notices were brought to her attention. We are requesting all penalties and interest be removed.

He also argued that Bang made her investment "in good faith expecting a reasonable return."

The telephone conference occurred on January 25, 2007. According to the Appeals officer's notes of the conference, Bang's accountant

> confirmed the TP's [taxpayer's] primary issue is the liability. He firmly believes the TP [taxpayer] should not have been assessed the negligence penalty.

In his declaration accompanying the IRS's motion for summary judgment, the Appeals officer states that during the telephone conference, the accountant "stated that the purpose behind the filing of a Request for a Collection Due Process Hearing was to challenge the merits underlying * * * Bang's 1983 income tax liability; [sic] including the negligence addition to tax."[20] The notes and the declaration say that Bang's accountant offered no collection alternatives. The Appeals officer informed the

---

[20]The Appeals officer does not clarify whether he was referring to both the 5-percent and 50-percent-of-interest negligence penalties or just one of the two.

accountant that he could not raise objections to the negligence penalty at a collection due process hearing because Bang had received the deficiency notice and signed the waiver form. The notes said:

> I explained that under IRS 6330(c)(2)(B) the taxpayer cannot raise liability in a Collection Due Process (CDP) Hearing if they have had a prior opportunity. In this case the taxpayer both received a SND and signed a F.4089-B agreement.

The notes stated that Bang's accountant said that he was not aware of such a rule, nor was he aware that his client had signed a waiver form.

On March 27, 2007, the IRS Appeals Office issued a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 that sustained the proposed levy. The determination recognized that Bang's request for a hearing contested her liability for "assessed negligence, penalties, and interest." But the determination stated:

> Taxpayer was not able to dispute liability within the hearing.

And:

> Taxpayer did raise liability as an issue. Taxpayer was not allowed to raise liability because she had a prior opportunity to dispute the liability.
>
> *        *        *        *        *        *        *
>
> The taxpayer's representative, Randall Kramer, stated the primary issue is the liability. He firmly believes the taxpayer should not have been assessed the negligence penalty. Settlement Officer Bruce Stork explained that under IRC 6330(c)(2)(B) the taxpayer cannot raise liability in a Collection Due Process (CDP) Hearing if they have had a prior opportunity. In this case the taxpayer both received a Statutory Notice of Deficiency and signed a F.4089-B agreement. The Audit Reconsideration Process was explained and recommended as the appropriate venue to get the taxpayer's issue resolved.

Taxpayer presented no other issues.

Bang timely challenged the levy by petition to this Court on April 27, 2007. In a letter attached to her petition, she stated that she felt it was "unreasonable" that she be "assessed a penalty and 20 years [sic] worth of accrued interest" for an investment she made with "her trusted investment advisor of many years" with no tax avoidance purpose.

The extensive procedural history of the Contra Costa partners' case and this case is summarized in the chart below.

Procedural History of Cases Against
Contra Costa Partners and Bang

| Date | Action | Effect |
|------|--------|--------|
| Apr. 12, 1989 | IRS issues FPAA for Contra Costa partnership | •IRS reduces $437,500 in deductions claimed by partnership to $0 |
| July 13, 1989 | Contra Costa partners and IRS agree to be bound by Utah Jojoba I Research v. Commissioner, docket No. 7619-90 | •Agreement requires that the resolution of the partnership items in Contra Costa partnership case would follow the determinations made by the Tax Court in the partnership case Utah Jojoba I Research v. Commissioner, docket No. 7619-90 |
| Jan. 5, 1998 | Tax Court issues opinion in Utah Jojoba I Research v. Commissioner, T.C. Memo. 1998-6 | •Tax Court disallows the deductions claimed by Utah Jojoba I partnership |

| | | |
|---|---|---|
| Apr. 11, 2005 | Tax Court decides <u>Contra Costa case</u> | •Tax Court upholds all adjustments in the FPAA issued to Contra Costa partnership |
| March 16, 2006 | IRS issues deficiency notice to Bang | •Calculations assume that Bang owes $2,636 more tax than she reported in connection with the disallowed partnership loss.<br>•Bang owes $131.80, or 5-percent of $2,636, for the 5-percent negligence penalty.<br>•Bang owes 50 percent of interest on $2,636 as the 50-percent negligence penalty, calculated using the interest accumulated from the date the tax was due to the earlier of the date the tax is assessed or the date the tax is paid. |
| March 27, 2006 | Assessment against Bang | Assessment includes:<br>•$2,636 increase in Bang's tax liability because of disallowance of her share of the disallowed Contra Costa deductions<br>•$21,553.52 in underpayment interest on $2,636 (calculated at the 120-percent rate because of the tax-motivated transaction) |
| May 8, 2006 | Bang consents to immediate assessment | Consent to assessment includes:<br>•$131.80 (5-percent negligence penalty)<br>•50 percent of interest on $2,636 |
| May 12, 2006 | Bang's payment to the IRS is received | Payment includes:<br>•$2,636<br>•$131.80 (5-percent negligence penalty) |
| June 12, 2006 | IRS assesses penalties | Assessment includes:<br>•$131.80 (5-percent negligence penalty)<br>•$10,776.76 (50-percent negligence penalty)<br>•$13.18 failure-to-pay-tax penalty |

| June 12, 2006 | Last day for Bang to challenge deficiency notice by filing a Tax Court petition | Amounts Bang could challenge by filing a petition:<br>•$131.80 (5-percent negligence penalty)<br>•$10,776.76 (50-percent negligence penalty) |
| August 23, 2006 | IRS issues final notice of intent to levy | Final notice of intent to levy includes:<br>•$10,776.76 (50-percent negligence penalty)<br>•$21,553.52 in underpayment interest on $2,636 (calculated at the 120-percent rate because of the tax-motivated transaction) |
| March 27, 2007 | IRS issues notice of determination | •Sustains levy |

## Discussion

1. Arguments of the Parties

The IRS asserts in its motion for summary judgment that Bang's receipt of the deficiency notice precludes her from challenging the 50-percent-of-interest negligence penalty. The IRS also argues that Bang's complaint over the unreasonableness of the accrual of interest was not made with sufficient specificity at the hearing to be considered a claim for interest abatement under section 6404(e). According to the IRS, Bang failed to specify grounds on which an interest abatement claim could be granted, such as a specific error or delay caused by a ministerial act of the IRS. The IRS also argues that even if the Court could consider whether Bang is entitled to abatement of

interest under section 6404(e), the Court should sustain the Appeals officer's decision not to abate interest.

With respect to the amount of its assessment of tax-motivated transaction interest, the IRS claims that the stipulation to be bound and the findings of fact in Utah Jojoba I are sufficient "to establish that petitioner's involvement in Contra Costa Jojoba Research Partners was a 'tax motivated transaction'", [and] that "petitioner's underpayment was attributable to the tax motivated transactions of the Contra Costa Jojoba Research Partners partnership" and that the underpayment is substantial.

The IRS did not make any arguments in its submission to this Court regarding the failure-to-pay-tax-penalty assessed.

Bang's response to the IRS's motion for summary judgment was as follows:

> Petitioner objects to and resists Respondent's Motion for Summary Judgment on the following grounds:
>
> 1.   The calculation and assessment of Restricted Interest and the Negligence Penalty are both incorrectly determined and exceed the maximum amount allowable by law.
>
> 2.   The signature of Petitioner on the Notice of Deficiency/Waiver dated May 8, 2006 was improperly obtained because the listing of income tax discrepancy adjustments did not include the Restricted Interest or the Negligence Penalty amounts causing the taxpayer to believe that the amount she was agreeing to was only $2,767.80, rather than the additional amount of $32,000.00 plus dollars.  Therefore it should be thrown out and the taxpayer allowed to contest the entire balance assessed.
>
> THEREFORE, Petitioner respectfully requests that Respondent's Motion for Summary Judgment be denied and for such other and further relief as the Court deems just.

We interpret Bang's response as a challenge to her liability for the underpayment interest, the increased rate of interest for a tax-motivated transaction, the 50-percent-of-interest negligence penalty, and the failure-to-pay-tax penalty, but not her liability for the $2,636 and the 5-percent negligence penalty.

2.   Standard of Review and Issues To Be Decided

A motion for summary judgment will be granted if the pleadings, answers to interrogatories, depositions, admissions, and other acceptable materials, together with any affidavits, show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law.  Rule 121(b); Elec. Arts, Inc. v. Commissioner, 118 T.C. 226, 238 (2002).  A partial summary adjudication may be made which does not dispose of all the issues in the case.  Rule 121(b); Tracinda Corp. v. Commissioner, 111 T.C. 315, 323-324 (1998).  The moving party, here the IRS, has the burden of proving that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law.  Rauenhorst v. Commissioner, 119 T.C. 157, 162 (2002).

At a collection due process hearing, a taxpayer may raise challenges to the existence or amount of the "underlying tax liability" only if the taxpayer "did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability."  Sec.

6330(c)(2)(B).[21]  If a taxpayer is not permitted under section 6330 to raise a challenge to the underlying tax liability, the only issues that a taxpayer can raise before the Appeals officer are appropriate spousal defenses, challenges to the appropriateness of collection actions, and any collection alternatives.  Sec. 6330(c)(2)(A).

Section 6330(d)(1) provides a person with the right to obtain Tax Court review of the administrative determination by filing a petition with the Court within 30 days of the determination.  If the validity of the underlying tax liability is properly at issue, the Court will review the determination de novo.  Giamelli v. Commissioner, 129 T.C. 107, 111 (2007); Davis v. Commissioner, 115 T.C. 35, 39 (2000); Sego v. Commissioner, 114 T.C. 604, 610 (2000); Goza v. Commissioner, 114 T.C. 176, 181-182 (2000).  All other elements of the determination are reviewed for abuse of discretion.  Sego v. Commissioner, supra at 610; Goza v. Commissioner, supra at 181-182.  Whether an abuse of discretion has occurred depends upon whether the exercise of discretion is without sound basis in fact or law.  Freije v. Commissioner, 125 T.C. 14, 23 (2005).  Generally we consider only

---

[21]See Goza v. Commissioner, 114 T.C. 176, 182-183 (2000) (a taxpayer who received deficiency notice was precluded from contesting his tax liability for the underlying taxes at the Appeals Office collection due process administrative hearing, or at the Tax Court on appeal of the Appeals Office determination). The phrase "underlying tax liability" includes all forms of interest and all penalties described in the Code.

those arguments, issues, and other matters (including a challenge to the underlying tax liability) that the taxpayer raised at the collection hearing or otherwise brought to the attention of Appeals.  Giamelli v. Commissioner, supra at 112-113; Magana v. Commissioner, 118 T.C. 488, 493 (2002); see also sec. 301.6330-1(f)(2), Q&A-F3, Proced. & Admin. Regs.

Bang did not offer a specific collection alternative to be considered by the Appeals officer, nor did she raise any other appropriate defenses to collection.  See sec. 6330(c)(2)(A), (3)(B).  Her sole contention is that she is not liable for various interest and penalties, specifically underpayment interest, the 20-percent increase in interest rate for underpayments attributable to tax-motivated transactions, the 50-percent-of-interest penalty for underpayments resulting from negligence, and the failure-to-pay penalty.

3.   Underpayment Interest

Section 6601(a) provides that if a taxpayer fails to pay the tax imposed by the Code, interest shall accrue from the date that the tax payment is due until the date it is paid.  The rate of interest is "the underpayment rate established under section 6621".[22]  Id.  To illustrate the calculation of underpayment

---

[22]This statutory language is in effect for interest accruing after December 31, 1986.  For interest accruing before then, the statute is worded differently, but is substantively the same for these purposes.

interest, suppose that a taxpayer fails to pay $1,000 in tax that was due on April 15. Assume that the underpayment rate is 6 percent for the second quarter of the same hypothetical year. On May 15, the taxpayer would owe interest of $1,000 x $(1+(0.06/365))^{30}$-$1,000. This amount reflects 30 days of interest, compounded daily. Sec. 6622(a).[23] This amount is separate from the $1,000 tax liability.

On her 1983 income tax return, Bang claimed a $12,500 deduction. The Tax Court in the partnership-level Contra Costa partnership proceeding determined that Bang was not entitled to the deduction. Without the deduction, Bang's tax liability for 1983 was $2,636 more than she reported and paid on her 1983 return. Thus, under section 6601(a), Bang owed underpayment interest on the $2,636 from April 15, 1984, until May 12, 2006, the day she paid the $2,636.

On March 27, 2006, the IRS assessed the $2,636 increase in tax resulting from the disallowance of Bang's share of the partnership's deduction. That same day, it assessed $21,553.52 in interest on the $2,636 underpayment, calculated to the day of

---

[23]The interest, based on the formula in the text, is $4.943279. The IRS issued tables to be used in computing underpayment interest. Rev. Proc. 95-17, 1995-1 C.B. 556, 556. The tables show that the interest accruing over 30 days, at a rate of 6 percent, is equal to 0.004943279 multiplied by the principal amount. Id. table 17, 1995-1 C.B. at 571. The factor in the tables, 0.004943279, is arithmetically equivalent to $(1+(0.06/365))^{30}$-1. Multiplying this by $1,000, we arrive at $4.943279.

assessment.  The interest was calculated at 120 percent of the normal rate because the IRS had determined that the entire underpayment was attributable to a tax-motivated transaction.

The IRS notified Bang that it intended to levy to collect the underpayment interest (among other amounts).  Bang challenged the levy at the administrative level.  Bang contested her interest liability in her request for a hearing.  Her contention was that the interest was compounded over an excessive amount of time.  The Appeals officer did not consider Bang's contention.

A.   Except for Entitlement to Interest Abatement Under Section 6404(e)(1), We Will Not Consider Any Issues Related to Bang's Liability for Underpayment Interest.

The IRS argues in its motion for summary judgment that Bang should be considered to have raised her liability for interest at the hearing only as a request for interest abatement under section 6404(e)(1) (a provision that permits the IRS to abate interest accruals caused by IRS errors and delays), not as a challenge to any other aspect of her interest liability.  Thus, the IRS urges us not to reach any other aspect of Bang's liability for underpayment interest.  We agree with the IRS that our review should be limited.  We note that in her response to the IRS's motion for summary judgment, Bang failed to point to any other error in the IRS's determination that she was liable for underpayment interest.

B.    Whether Bang Preserved Her Interest Abatement Claim for Judicial Review

The IRS also contends that Bang failed to make a claim for interest abatement with sufficient specificity at the administrative level and that consequently the Court in reviewing the determination of the Appeals officer cannot consider her claim for interest abatement.  The IRS cites Giamelli v. Commissioner, supra at 113, in support of this proposition.  We disagree.

Bang's accountant argued in his letter attached to the request for a hearing that the underpayment interest should be abated because it had accrued over an unreasonably long time and because she paid the underlying amount of $2,636 when it was finally brought to her attention.  These statements sufficiently preserved Bang's argument regarding interest abatement for judicial review.  In Brecht v. Commissioner, T.C. Memo. 2008-213, a taxpayer made no argument to the Appeals officer explaining why interest should be abated, and the Court held that it could not review the taxpayer's entitlement to interest abatement.  By contrast with Brecht, Bang presented her arguments about interest abatement in her request for a hearing.  The Appeals officer's failure to determine whether Bang was entitled to interest abatement does not preclude us from making the determination ourselves.  See Urbano v. Commissioner, 122 T.C. 384, 391 (2004) (citing Katz v. Commissioner, 115 T.C. 329, 340-341 (2000))

(holding that we can review an Appeals officer's denial of interest abatement if the issue was raised at the collection due process hearing). The alternative of remanding the case for the Appeals officer to determine interest abatement is not appropriate because Bang has been given sufficient opportunity both at her hearing and in this proceeding to explain why she is entitled to interest abatement. See Lunsford v. Commissioner, 117 T.C. 183, 189 (2001) (declining to remand collection review case to Appeals officer when the Court can evaluate the merits of the taxpayer's arguments without a remand).

C.   Bang Is Not Entitled to Interest Abatement

Bang's main argument, presented by her accountant at the hearing, is that the interest assessed has accrued over an unreasonably long time because of pending litigation about which she had no knowledge. However, the length of time which partnership-level litigation takes to resolve is not a delay in a "ministerial act" on which an abatement claim may be based. Lee v. Commissioner, 113 T.C. 145, 150 (1999) ("The mere passage of time in the litigation phase of a tax dispute does not establish error or delay by the Commissioner in performing a ministerial act."); Corson v. Commissioner, T.C. Memo. 2009-95; Kimball v.

Commissioner, T.C. Memo. 2008-78.  Bang is therefore not entitled to interest abatement.  The IRS did not err in failing to abate interest.[24]

4.  20 Percent Additional Interest for Tax-Motivated Transactions

Under former section 6621(d) (renumbered as section 6621(c) pursuant to the Tax Reform Act of 1986, see supra note 11), the annual rate of interest on the portion of an underpayment that is attributable to a tax-motivated transaction is 120 percent of the "underpayment rate" established under section 6621(b).  Deficit Reduction Act of 1984, Pub. L. 98-369, 98 Stat. 682.[25]  The

_____

[24]In 1996, Congress amended sec. 6404(e) to provide that interest abatement is available for an "unreasonable" delay in performing a "ministerial or managerial" act.  Taxpayer Bill of Rights 2, Pub. L. 104-168, sec. 301(a), 110 Stat. 1452, 1457 (1996).  This amendment applies only to tax years beginning after July 30, 1996.  Id. sec. 301(c).

[25]Former sec. 6621(d) provides:

SEC. 6621(d).  Interest on Substantial Underpayments Attributable to Tax Motivated Transactions.--

    (1) In general.--In the case of interest payable under section 6601 with respect to any substantial underpayment attributable to tax motivated transactions, the annual rate of interest established under this section shall be 120 percent of the adjusted rate established under subsection (b).

    (2) Substantial underpayment attributable to tax motivated transactions.--For purposes of this subsection, the term "substantial underpayment attributable to tax motivated transactions" means any underpayment of taxes imposed by subtitle A for any taxable year which is attributable to 1 or more tax motivated transactions if the amount of the underpayment for such year so attributable exceeds $1,000.

    (3) Tax motivated transactions.--

        (A) In general.--For purposes of this subsection, the

(continued...)

increase in the interest rate required by former section 6621(d) affects the interest rate only for the period from December 31, 1984--the effective date of section 6621(d)--until the date the tax is finally paid. For periods before December 31, 1984, the interest rate is unaffected by former section 6621(d).

To illustrate the calculation of the interest rate for tax-motivated transactions, suppose that a taxpayer fails to pay $1,000 in tax on April 15, when the tax return and the tax are due. Assume further that the failure to timely pay the entire $1,000 is due to a tax-motivated transaction. Assume that the underpayment rate is 6 percent for the second quarter of the year in which the return is due. Section 6621(d) would require that the 6-percent interest rate be increased by 20 percent to 7.2 percent. On May 15, the taxpayer would owe interest of $1,000 x

---

[25](...continued)
term "tax motivated transaction" means--

(i) any valuation overstatement (within the meaning of section 6659(c)),

(ii) any loss disallowed by reason of section 465(a) and any credit disallowed under 46(c)(8),

(iii) any straddle (as defined in section 1092(c) without regard to subsections (d) and (e) of section 1092), and

(iv) any use of an accounting method specified in regulations prescribed by the Secretary as a use which may result in a substantial distortion of income for any period.

Clause (v) was added by TRA 1986 sec. 1535(a), 100 Stat. 2750, and applies to interest accruing after Dec. 31, 1984.

$(1+(0.072/365))^{30}-\$1,000$, an amount that reflects 30 days of interest accumulation compounded daily. Sec. 6622(a). This amount is separate from the \$1,000 tax liability.

Bang did not have an opportunity before the collection hearing to contest all of the elements of the tax-motivated interest penalty. The deficiency notice was not such an opportunity. Even though the deficiency notice contained the assertion that Bang was liable for increased interest on the portion of her underpayment attributable to a tax-motivated transaction and even though Bang could have filed a Tax Court petition in response to the deficiency notice, the Court would not have had jurisdiction in a partner-level deficiency case to determine Bang's liability for the increased interest. The reason is that increased interest is not a deficiency. Odend'hal v. Commissioner, 95 T.C. 617, 621 (1990); White v. Commissioner, 95 T.C. 209, 214 (1990). Thus, the Appeals officer who made the determination sustaining the levy against Bang had jurisdiction to determine whether Bang should be subject to the increased interest rate for a tax-motivated transaction. Although Bang's Appeals officer did not consider Bang's argument why she should not be subject to the increased interest rate for tax-motivated transactions, this does not preclude us from considering whether Bang is liable ourselves.

Bang is liable for the increased interest for tax-motivated transactions. First, the transactions of the partnership were tax motivated. A tax-motivated transaction includes a transaction for which there is "an accounting method specified in regulations prescribed by the Secretary as a use which may result in a substantial distortion of income for any period." Former sec. 6621(d)(3)(A)(iv). Substantial distortions of income include a deduction which results in a "material distortion of income". Sec. 301.6621-2T, Q&A-3(9)(iii), Temporary Proced. & Admin. Regs., 49 Fed. Reg. 50392 (Dec. 2, 1984). The Contra Costa partners agreed to be bound by the determinations of issues made in Utah Jojoba I Research v. Commissioner, docket No. 7619-90, including "findings of underlying facts with respect to tax motivated transactions, a valuation overstatement, or other elements applicable to a determination of additions to tax and/or section 6621(c) interest." The Tax Court held in Utah Jojoba I Research v. Commissioner, T.C. Memo. 1998-6, that the "R&D agreement before us was mere window dressing, designed and entered into solely to decrease the cost of participation in the jojoba farming venture for the limited partners through the mechanism of a large up-front deduction for expenditures that in actuality were capital contributions." To claim a large upfront deduction for nondeductible capital expenditures is a material distortion of income. The underpayment resulting from such a

deduction is attributable to a tax-motivated transaction. <u>Bailey v. Commissioner</u>, 90 T.C. 558, 629 (1988), affd. in part and vacated in part 912 F.2d 44 (2d Cir. 1990); <u>Glassley v. Commissioner</u>, T.C. Memo. 1996-206. Because the Contra Costa partners, including Bang, were bound by the disposition of issues and findings of fact in <u>Utah Jojoba I</u>, the Contra Costa partnership's transactions were tax motivated.

Second, we must determine the amount of Bang's underpayment of tax that was attributable to the partnership's tax-motivated transaction and whether that underpayment was substantial. See former sec. 6621(d), Deficit Reduction Act of 1984, Pub. L. 98-369, sec. 144(a), 98 Stat. 682. The record indicates that the entire $12,500 adjustment of Bang's research and experimental expenditures deduction is attributable to the partnership's tax-motivated transaction. The underpayment stemming from this adjustment ($2,636) is substantial because it exceeds $1,000. See <u>id.</u> As all elements of former section 6621(d) interest have been established, we sustain the Appeals officer's determination with respect to tax-motivated transaction interest.

5. <u>Fifty-Percent-of-Interest Negligence Penalty</u>

The IRS argues that Bang was not entitled to dispute her liability for the 50-percent-of-interest penalty with the Appeals officer. It contends that Bang had already received a deficiency notice for the liability. We agree.

Under former section 6653(a)(2), if a portion of an underpayment is attributable to negligence (or intentional disregard of the rules or regulations), there is added to the tax 50 percent of the interest payable under section 6601 on the portion of the underpayment attributable to such negligence.[26] For this purpose, the interest payable under section 6601 includes the 120-percent increased interest rate for tax-motivated transaction interest if the portion of the underpayment that is attributable to negligence is also attributable to a tax-motivated transaction. The interest period for which the 50-percent-of-interest negligence penalty applies begins on the day the payment of tax was due and stops accruing once the taxpayer pays the tax or the IRS assesses the tax. Id.

---

[26]Former sec. 6653(a)(2) provides:

   (2) Additional amount for portion attributable to negligence, etc.--There shall be added to the tax (in addition to the amount determined under paragraph (1)) an amount equal to 50 percent of the interest payable under section 6601--

      (A) with respect to the portion of the underpayment described in paragraph (1) which is attributable to the negligence or intentional disregard referred to in paragraph (1), and

      (B) for the period beginning on the last date prescribed by law for payment of such underpayment (determined without regard to any extension) and ending on the date of the assessment of the tax (or, if earlier, the date of the payment of the tax).

The Technical Corrections Act of 1982, Pub. L. 97-448, sec. 107(a)(3), 96 Stat. 2391, inserted the phrase "(or, if earlier, the date of the payment of the tax)" at the end of former sec. 6653(a)(2) above. The insertion was retroactively effective to the date of sec. 6653(a)(2)'s enactment. Id. sec. 109.

To illustrate how this penalty is calculated, assume that a taxpayer fails to pay $1,000 of tax due on April 15. Suppose further that of this $1,000 underpayment, $200 is both (1) the result of the taxpayer's negligence, and (2) attributable to a tax-motivated transaction. Suppose that over the next 3 years the underpayment interest rate is a constant 6 percent and that the tax is assessed 3 years later on April 15. Interest will be computed at an interest rate of 6 percent, increased by 20 percent for tax-motivated transactions, resulting in a total interest charge of 7.2 percent that is compounded daily under section 6662. The 3-year interest charge would be $48.22 (that is, $200 x $(1+(0.072/365))^{(365 \times 3)}$)-$200. The taxpayer would then owe a negligence penalty of $24.11 (that is, 50 percent of the entire interest charge of $48.22).

Bang claimed on her 1983 income tax return that she had a $12,500 loss stemming from a loss claimed by the Contra Costa partnership. She and the other Contra Costa partners then agreed to be bound by the decision in the Utah Jojoba partnership case. The Court in the Contra Costa case disallowed the losses claimed by the Contra Costa partnership. The amount of the 50-percent-of-interest negligence penalty is a deficiency attributable to an affected item that requires a partner-level determination.[27]

---

[27]See former sec. 6230(a)(2)(A)(i) (as amended by TRA 1986), sec. 1875(d)(2)(A), 100 Stat. 2896 (applying subch. B to any

(continued...)

---

[27](...continued)
deficiency attributable to affected items which require partner-level determination); N.C.F. Energy Partners v. Commissioner, 89 T.C. 741, 744-745 (1987) ("In contrast, the other type of affected item requires factual determinations to be made at the partner level.  For example, a partner will be liable for the addition to tax for negligence pursuant to section 6653(a) if he has an underpayment of tax some part of which is due to negligence.  The existence of an underpayment of tax at the partner level cannot be made until the partner's share of distributable items of income, loss, deduction, and credit is determined in the partnership level proceeding.  Once the partnership level proceeding ends, however, the factual question of whether any part of the underpayment was due to the partner's negligence must be answered at the partner level.  In such instances, unless conceded by the partner, respondent will issue a notice of deficiency for the addition to tax under section 6653(a) to the partner after the completion of the partnership level proceedings.  The partner may then file a petition in this Court for redetermination of that deficiency.  The prior partnership level proceeding will be res judicata as to the partnership adjustments, and in the subsequent litigation, we will decide only whether some part of the underpayment, if any, was due to negligence.").

Sec. 6230(a)(2)(A)(i) was amended in 1997 to provide that penalties related to partnership adjustments be determined at the partnership level and therefore not be included in a notice of deficiency.  Taxpayer Relief Act of 1997, Pub. L. 105-34, sec. 1238(b)(2), (c), 111 Stat. 1026, 1027; New Millennium Trading, L.L.C. v. Commissioner, 131 T.C. 275, 279 (2008); Domulewicz v. Commissioner, 129 T.C. 11, 22 (2007), affd. in part and remanded sub nom. Desmet v. Commissioner, 581 F.3d 297 (6th Cir. 2009).  Under post-1997 law, once the partnership level proceedings are concluded and a decision in favor of the IRS becomes final, the IRS can assess the penalty without issuing a notice of deficiency.  Callaway v. Commissioner, 231 F.3d 106, 110 n.5 (2d Cir. 2000), affg. T.C. Memo. 1998-99; New Millennium Trading, L.L.C. v. Commissioner, supra at 280, citing sec. 6230(a)(1) and N.C.F. Energy Partners v. Commissioner, supra at 744); Domulewicz v. Commissioner, supra at 23; sec. 6231(a)(6)-1(a)(3), Proced. & Admin. Regs.  After the 1997 amendment, an individual partner's only recourse to present any partner-level reasonable cause and good faith defense he or she may have is to file a claim for refund under sec. 6230(c)(1) after paying the applicable penalty

(continued...)

Thus, the IRS was required to issue Bang a deficiency notice to assert that Bang was liable for the 6653(a)(2) negligence penalty. See former sec. 6662(a)(2); Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. 97-248, sec. 323(a), 96 Stat. 613 (renumbering former section 6660 of the Internal Revenue Code of 1954, stating in part that references to "tax" in the Code include additions to tax and penalties, and additions to tax and penalties must be collected in the same manner as taxes, unless a statutory exception applies). (This is so even though the amount of underpayment interest, including the increased 120-percent rate for a tax-motivated transaction, is not subject to deficiency procedures.) The IRS issued such a deficiency notice. This Court has jurisdiction in deficiency cases to redetermine the amounts of penalties pursuant to section 6214(a).[28] Thus,

---

[27](...continued)
in full. New Millennium Trading, L.L.C. v. Commissioner, supra at 280; sec. 301.6221-1(d), Proced. & Admin. Regs. The pre-1997 rule applies to any redetermination of the amounts reported in the Contra Costa partnership's 1983 return.

[28]Sec. 6214(a) provides:

> SEC. 6214(a). Jurisdiction as to Increase of Deficiency, Additional Amounts, or Additions to the Tax.--Except as provided by section 7463, the Tax Court shall have jurisdiction to redetermine the correct amount of the deficiency * * *, notice of which has been mailed to the taxpayer, and to determine whether any additional amount, or any addition to tax should be assessed, if claim therefor is asserted by the Secretary at or before the hearing or a rehearing.

Thus, if the addition to tax is asserted in the notice of deficiency, this Court has jurisdiction to redetermine it because
(continued...)

had Bang challenged the 50-percent-of-interest-negligence penalty
by filing a petition in response to her deficiency notice, this
Court would have had the power to decide if she should have been
relieved of it.  See Ghose v. Commissioner, T.C. Memo. 2008-80
(after the Tax Court entered the decision against the Contra
Costa partners at the partnership level, the IRS issued a notice
of deficiency to one of Bang's partners for the 1983 year,
alleging a penalty of $272.30 under former section 6653(a)(1),
and "50 percent of the interest" due on the deficiency for the
1983 taxable year under former section 6653(a)(2); the partner
filed a petition, and after a trial, this Court held that the
partner was liable for the additions to tax under section
6653(a)(1) and (2)).[29]

---

[28](...continued)
it was asserted before a potential hearing.

The Court's jurisdiction in a partner-level proceeding to
redetermine affected items such as penalties does not extend to
the partnership-item component of penalties.  Partnership items
are determined solely at the partnership level.  Former sec.
6221.

[29]In Helbig v. Commissioner, T.C. Memo. 2008-243, affd.
without published opinion 106 AFTR 2d 2010-6820, 2010-2 USTC par.
50,692 (9th Cir. 2010), Helbig, a partner in the Contra Costa
partnership, claimed deductions from the partnership on his 1983,
1984, and 1985 tax returns.  After the Tax Court entered a
decision against the Contra Costa partnership regarding the 1983,
1984, and 1985 tax years, the IRS issued deficiency notices to
Helbig in which the IRS asserted that Helbig owed penalties under
sec. 6653(a)(1) and (2).  Helbig petitioned the Tax Court, which
found that he was negligent.

(continued...)

Mathematically, the penalty is 50 percent of the interest payable under section 6601(a) on the amount of the underpayment due to negligence. The amount of interest payable under section 6601(a), for purposes of calculating the penalty against Bang, ran until the tax was assessed on March 27, 2006. The deficiency notice did not notify Bang of the absolute amount of the 50-percent-of-interest penalty because the notice was issued on March 13, 2006, 2 weeks before the interest period closed. See Kamholz v. Commissioner, 94 T.C. 11, 12 (1990) ("In fact, the amount [of the section 6653(a)(2) penalty] could not have been determined when the notice was mailed, since the amount of interest on which it was based had not been finally determined."). But the penalty was certainly invoked in the deficiency notice. The first page of the notice of deficiency (and the waiver form) stated that "50% of interest on $2,636.00" would be due. The "Continuation Sheet" stated that the IRS determined a "fifty (50) percent of the interest due on the part

---

²⁹(...continued)
In Swanson v. Commissioner, T.C. Memo. 2009-31, Swanson, a partner in California Jojoba Ventures, claimed deductions from the partnership on his 1983 tax return. In the partnership case the partners agreed to be bound by Utah Jojoba I Research v. Commissioner, docket No. 7619-90. After Utah Jojoba I was decided, the Tax Court in the California Jojoba Ventures case sustained the FPAA issued to California Jojoba Ventures. The IRS issued notices of deficiency asserting that Swanson was liable for the sec. 6653(a)(1) and (2) penalties. Swanson filed a Tax Court petition, and the Court found that Swanson was not negligent and should not be subject to the penalty.

of the underpayment that is due to negligence".  It also explained how the penalty was calculated:  "The penalty is figured on the earlier of the date of assessment or the date the tax was paid."

Section 6330(c)(2)(B) provides that a taxpayer may contest the underlying tax liability if the taxpayer "did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability." The question is whether the deficiency notice was "for" Bang's liability for the 50-percent-of-interest negligence penalty.  The parties have not pointed us to any legal authority discussing what it means for a statutory notice of deficiency to be "for" a particular tax liability for the purpose of section 6330(c)(2)(B).  Besides section 6330(c)(2)(B), there are other provisions that require an evaluation of the relationship between a statutory notice of deficiency and a particular tax liability. Section 7522(a) requires a deficiency notice to "describe the basis for, and identify the amounts (if any) of, the tax due, interest additional amounts, additions to the tax, and assessable penalties included in such notice.  An inadequate description under the preceding sentence shall not invalidate such notice." In Burnside v. Commissioner, T.C. Memo. 1994-308, the Tax Court held that a deficiency notice explaining that the IRS had

determined a penalty under section 6653(a)(1)(B),[30] in an amount equal to "50 percent of the interest due on the portion of the underpayment attributable to negligence", was in compliance with section 7522(a).

Rule 142(a) provides that the burden of proof falls on the taxpayer with respect to issues raised in the deficiency notice and falls on the IRS with respect to issues raised in the answer. In Farr v. Commissioner, T.C. Memo. 1993-29, affd. without published opinion 41 F.3d 1513 (9th Cir. 1994), the IRS issued a notice of deficiency determining an addition to tax equal to "50 percent of the interest due on the portion of the underpayment attributable to negligence pursuant to sec. 6653(a)(1)(B)." The Tax Court held that the taxpayer had the burden of proving she was not liable for the section 6653(a)(1)(B) penalty.

The deficiency notices in Burnside and Farr invoked section 6653(a)(1)(B) using words like those used in the deficiency notice issued to Bang. In each case, this Court held that the liability for the section 6653(a)(1)(B) penalty was sufficiently described in the deficiency notices for the purpose of the rules at issue in those cases.

The statements in the notice of deficiency explaining the 50-percent-of-interest negligence penalty made the deficiency

---

[30]Sec. 6653(a)(2) was renumbered (with minimal substantive change) as sec. 6653(a)(1)(B) pursuant to TRA 1986 sec. 1503(a).

notice "for" the penalty.  Bang "received" the deficiency notice.
Therefore, Bang was not entitled to raise a challenge to the
amount of the penalty at the collection review hearing.  We
sustain the Appeals officer's determination with respect to the
50-percent-of-interest penalty.

6.   Failure-To-Pay-Tax Penalty

The proposed levy that was sustained by the Appeals officer
included, among other things, the amount of $13.18.  All we know
about this $13.18 is that the same amount was listed on the IRS
record of its transactions with Bang for her 1983 income tax year
as a failure-to-pay-tax penalty and that it was assessed on June
12, 2006.  Two types of failure-to-pay-tax penalties appear in
the Internal Revenue Code, section 6651(a)(2) and section
6651(a)(3).  Section 6651(a)(2) imposes a penalty for failure to
timely pay tax shown on the return on or before the date
prescribed for payment.[31]  As Bang did pay the tax shown on her

---

[31]Sec. 6651(a)(2) provides:

SEC. 6651(a).  Addition to the Tax.--In case of failure--

\*        \*        \*        \*        \*        \*        \*

     (2) to pay the amount shown as tax on any return  * * * on
or before the date prescribed for payment of such tax (determined
with regard to any extension of time for payment), unless it is
shown that such failure is due to reasonable cause and not due to
willful neglect, there shall be added to the amount shown as tax
on such return 0.5 percent of the amount of such tax if the
failure is for not more than 1 month, with an additional 0.5
percent for each additional month or fraction thereof during which
such failure continues, not exceeding 25 percent in the aggregate
* * *

(continued...)

1983 return, the penalty is inapplicable to her.  Section

6651(a)(3) imposes a penalty for the failure to timely pay tax

that should have been shown on the return if the taxpayer does

not pay the tax within 21 days of notice and demand for payment

of the tax.[32]  Recall that Bang filed her 1983 tax return

---

[31](...continued)
Sec. 6651(b)(2) provides:

SEC. 6651(b).  Penalty Imposed on Net Amount Due.--For purposes of--

    \*        \*       \*       \*          \*       \*

     (2) subsection (a)(2), the amount of tax shown on the return shall, for purposes of computing the addition for any month, be reduced by the amount of any part of the tax which is paid on or before the beginning of such month and by the amount of any credit against the tax which may be claimed on the return \* \* \*

    To illustrate how the penalty is calculated, assume that a taxpayer fails to pay $1,000 of tax shown on her return and due on Apr. 15.  The taxpayer does not pay the tax until Apr. 15 of the following year.  The taxpayer would owe a failure to timely pay penalty of $60 (that is, $1,000 x 0.005 x 12).

[32]Sec. 6651(a)(3) provides:

SEC. 6651(a).  Addition to the Tax.--In case of failure--

\*        \*        \*        \*        \*        \*        \*

     (3) to pay the amount in respect of any tax required to be shown on a return \* \* \* which is not so shown \* \* \* within 21 calendar days from the date of notice and demand therefor \* \* \*, unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the amount of tax stated in the such notice and demand 0.5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 0.5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate.

(continued...)

claiming a $12,500 deduction.  Bang paid her tax liability as if

she was entitled to the $12,500 deduction.  In 2005, the Court in

the partnership-level proceeding determined that Bang and the

other partners were not entitled to the deductions they had

claimed.  The IRS issued a deficiency notice to Bang on March 13,

2006.  The deficiency notice did not include a determination

regarding the failure-to-pay-tax penalty.  The IRS assessed the

$2,636 increase in tax and the underpayment interest of

$21,553.52 on March 27, 2006.  Bang paid the $2,636 increase in

tax (as well as the 5-percent negligence penalty), and the

payment was received by the IRS 4 days later on May 12, 2006; but

the record does not state when a notice and demand for payment

was issued to collect the $2,636.  The IRS assessed a $13.18

failure-to-pay-tax penalty on June 12, 2006 (an amount which is

---

[32](...continued)
Sec. 6651(b)(3) provides:

SEC. 6651(b).  Penalty Imposed on Net Amount Due.--For Purposes of--

\*         \*         \*         \*         \*         \*         \*

       (3) subsection (a)(3), the amount of tax stated in the
notice and demand shall, for the purpose of computing the addition
for any month, be reduced by the amount of any part of the tax
which is paid before the beginning of such month.

To illustrate how the penalty is calculated, assume that a
taxpayer fails to pay $1,000 of tax not shown on her return (but
required to be shown on the taxpayer's return) within 21 days of
the date of notice and demand for payment of the tax.  The
taxpayer does not pay the tax until 1 year following the 21st day
after the date of notice and demand for payment.  The taxpayer
would owe a failure to timely pay penalty of $60 (that is, $1,000
x 0.005 x 12).

0.5 percent of $2,636).  The IRS then notified Bang on August 23, 2006, that it would levy to collect an amount that included the $13.18.  The Appeals officer refused to consider any of Bang's arguments at the administrative hearing, asserting that all of the arguments were about liability and that the arguments were improper because Bang had a prior opportunity to dispute her liability.  The IRS did not explain in its motion for summary judgment why Bang had a prior opportunity to dispute the failure-to-file penalty, or alternatively, why the determination of the Appeals officer should be sustained with respect to the levy of the failure-to-file penalty.  Nor did the IRS provide any facts through affidavits or other attachments to its motion that relate to this penalty, such as whether and when the IRS issued a notice and demand for payment of the $2,636.  Under these circumstances, we will deny the motion for summary judgment to the extent that it asks us to sustain the determination of the Appeals officer regarding the existence or amount of Bang's liability for the $13.18 failure-to-pay-tax penalty.

### Conclusion

Respondent's motion for summary judgment will be granted in part and denied in part.

An appropriate order

will be issued.